1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    CASEY D. MAYER,

11              Plaintiff,                    No. CIV S-10-1552 GGH P

12        vs.

13    LOUIS REDIX, et al.,                    ORDER &

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15    _____/

16    Introduction

17              Plaintiff is a federal prisoner proceeding in forma pauperis pursuant to Bivens v.

18    Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999

19    (1971).   Although plaintiff and defendant Dr. Redix have consented to the jurisdiction of the

20    undersigned, see docket #5 and # 25, the other defendants have not filed a consent form.  A

21    district judge will be assigned to this case.  Pending before the court is defendants' June 17, 2011

22    motion to dismiss the first amended complaint, to which plaintiff filed his opposition on

23    September 1, 2011, after which defendants filed their reply on September 29, 2011.[1]

24    _____

25              [1] Plaintiff was granted an extension of time for filing his opposition by order, filed on
      July 8, 2011, and defendants were granted an extension of time to file a reply by order filed on
26    September 6, 2011.

                                              1

1    Summary of Plaintiff's Allegations

2            Plaintiff names the following as defendants: Dr. Louis Redix-BOP contract

3    employee; Dr. Ross Quinn at FCI-Victorville; Assistant Health Administrator Louis Sterling at

4    FCI-Victorville; Health Services Administrator Cathy Garrett at FCI-Safford; Dr. Eduardo

5    Ferriol at FCI-Safford, Physician's Assistant Roberto Acosta at FCI-Safford.[2]  Plaintiff claims

6    defendants were deliberately indifferent to a serious medical condition in the treatment he

7    received for his shoulder, beginning with an allegedly failed reconstructive surgery for

8    "Acromioclavicular joint separation" repair, performed by a Bureau of Prison's (BOP) contract

9    surgeon, defendant Redix, on July 22, 2008[3] (which required later corrective surgery), after

10   which plaintiff was subjected to inadequate post-operative care, including being prescribed

11   inadequate pain medication and other medical care, including a brace, by defendant Quinn; being

12   denied medical treatment by defendant Sterling with respect to a pin protruding from plaintiff's

13   shoulder post-surgery; and being denied pain medication by defendants Acosta and Ferriol, both

14   of whom also denied a prescribed brace.  First Amended Complaint (FAC), pp. 1-6.  Defendants

15   Ferriol and Garrett in March of 2009 denied necessary corrective surgery.  Id., at 6.  Defendants

16   Acosta and Ferriol, as well as defendant Garrett, denied pain medication to plaintiff after his

17   second surgery in September, 2009.  Id., at 7.  In addition to his Eighth Amendment claims,

18   plaintiff alleges he was subjected to medical malpractice by defendant Redix.  Id., at 8-9.

19   Plaintiff seeks compensatory and punitive damages and injunctive relief.  Id., at 9.

20   \\\\\

21

22          [2] Although plaintiff had spelled this name as "Acousta," counsel for this defendant
     identifies the spelling as "Acosta" within the pending motion; moreover, this latter spelling is the
23   one used by the defendant in printing his name and signing his waiver of service, which spelling
     this court adopts.  See docket # 28.
24
          [3] The records submitted by defendants with their motion indicate that this initial surgery
25   occurred on July 22, 2008, and plaintiff identifies that as the correct date in FAC, p. 2, but
     elsewhere incorrectly identifies it as July 21, 2008 (FAC, p.4).  See Motion to Dismiss, Exhibit B
26   (docket # 31-3), p. 7, to Declaration of Sarah Schuh (referenced hereafter),

1   Defendant Redix

2           The federal defendants seek to distinguish themselves from defendant Redix and

3   indeed it appears that he is expressly not represented in the present motion to dismiss.  Defendant

4   Redix, along with plaintiff, consented to the jurisdiction of the undersigned and signed a waiver

5   of service of summons on March 22, 2011, in documents filed in the case docket on March 31,

6   2011, and April 4, 2011, respectively.  However, as no further response on behalf of defendant

7   Redix has been filed, the court must recommend that he be found to be in default.

8   Motion to Dismiss

9           The "federal defendants," who are identified as defendants Quinn, Sterling,

10  Garrett, Ferriol and Acosta, but not, as noted, defendant Redix, move to dismiss: 1) the Bivens

11  claims pursuant to non-enumerated Fed. R. Civ. P. 12(b) for failure to exhaust administrative

12  remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a); 2)

13  the Bivens official capacity claims; 3) any Fourteenth Amendment claim; 4)the medical

14  malpractice claim, to the extent it is construed as arising under the Federal Tort Claims Act

15  (FTCA) because it should only be brought against the United States, not named as a defendant;

16  also, if construed as an FTCA claim, for lack of jurisdiction for failure to exhaust administrative

17  remedies and under the independent contractor exception to the FTCA, 28 U.S.C. § 2671; 5) for

18  lack of proper venue under Fed. R. Civ. P. 12(b)(3) because most of the conduct at issue

19  occurred at Federal Correctional Institution (FCI) I - Victorville, located within the Central

20  District of California, and at FCI-Safford, located in the District of Arizona.  Notice of Motion,

21  pp. 1-2; Memorandum of Points and Authorities in support of Motion to Dismiss, pp. 7-18. [4]

22  \\\\\

23  \\\\\

24  _____

25          [4] Hereafter, reference to the memorandum of points and authorities in support of
    defendants' motion to dismiss located at docket # 31-1, pp. 1-18, will be identified as MTD and
26  the pagination referenced will be that of the court docket's electronic pagination system.

1    1) Administrative Exhaustion

2    *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

3    In a motion to dismiss for failure to exhaust administrative remedies under non-

4    enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

5    raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

6    Cir. 2003).  The parties may go outside the pleadings, submitting affidavits or declarations

7    under penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop

8    a record.  Wyatt v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair

9    notice by Order, filed on December 8, 2010 (docket # 15).

10   Should defendants submit declarations and/or other documentation

11   demonstrating an absence of exhaustion, making a prima facie showing, plaintiff must refute

12   that showing.  Plaintiff may rely upon statements made under the penalty of perjury in the

13   complaint if the complaint shows that plaintiff has personal knowledge of the matters stated and

14   plaintiff calls to the court's attention those parts of the complaint upon which plaintiff relies.  If

15   the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the

16   appropriate remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d

17   at 1120.

18   *PLRA Requirements*

19   The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

20   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

21   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

22   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

23   must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In

24   Booth v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

25   inmates must exhaust administrative remedies, regardless of the relief offered through

26   administrative procedures.  Therefore, inmates seeking money damages must also completely

4

exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819

(inmates seeking money damages are required to exhaust administrative remedies even where

the grievance process does not permit awards of money damages).  The United States Supreme

Court has held that exhaustion of administrative remedies under the PLRA requires that the

prisoner complete the administrative review process in accordance with the applicable

procedural rules.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context

of the applicable PLRA § 1997e(a) exhaustion requirement, any question as to whether a

procedural default may be found should a prisoner plaintiff fail to comply with the procedural

rules of a prison's grievance system has been resolved: the PLRA exhaustion requirement can

only be satisfied by "proper exhaustion of administrative remedies....," which means that a

prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally

defective administrative grievance or appeal."  Woodford v. Ngo, supra, at 84, 126 S. Ct. at

2382.  Moreover, 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to

prison conditions *until* such administrative remedies as are available are exhausted.  McKinney

v. Carey, 311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson (9th Cir. 2010) (PLRA

exhaustion requirement satisfied with respect to new claims within an amended complaint so

long as administrative remedies exhausted prior to filing amended complaint).

                              *Administrative Appeal Process*

         The Ninth Circuit has delineated the administrative grievance procedures

implemented by the federal Bureau of Prisons (BOP):

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15.
> As a first step in this process, an inmate normally must present his
> complaint informally to prison staff using a BP–8 form.  If the
> informal complaint does not resolve the dispute, the inmate may
> make an "Administrative Remedy Request" concerning the
> dispute to the prison Warden using a BP–9 form.  FN1  The BP–8
> and BP–9 are linked.  Both forms involve a complaint arising out
> of the same incident, and both forms must be submitted within 20
> calendar days of the date of that incident.  28 C.F.R. § 542.14(a).
> An extension of time is available upon a showing of valid reason
> for delay.  Section 542.14(b) provides a non-exhaustive list of

1    reasons that justify an extension of time. Valid reasons "include ...
     an extended period in-transit during which the inmate was
2    separated from documents needed to prepare the Request or
     Appeal." *Id.*
3

4          FN1. If a complaint is "sensitive," such that "the
           inmate's safety or well-being would be placed in
5          danger if the Request became known at the
           institution," the inmate may bypass the Warden
6          and file a BP–9 directly with the BOP Regional
           Director. 28 C.F.R. § 542.14(d).
7
     If the Warden renders an adverse decision on the BP–9, the
8    inmate may appeal to the Regional Director using a BP–10 form.
     28 C.F.R. § 542.15(a). The BP–10 must be submitted to the
9    Regional Director within 20 calendar days of the date of the
     Warden's decision. *Id.* As with the time period for filing a BP–9,
10   an extension of time is available upon a showing of a valid reason.
     *Id.* Section 542.15(a) provides that "[v]alid reasons for delay
11   include those situations described in § 542.14(b)." *Id.*

12   The inmate may appeal an adverse decision by the Regional
     Director to the Central Office (also called the General Counsel) of
13   the BOP using a BP–11 form. *Id.* The BP–11 must be submitted
     to the Central Office within 30 calendar days from the date of the
14   Regional Director's decision. *Id.* As with the time period for
     filing a BP–9 and a BP–10, an extension is available upon the
15   showing of a valid reason as described in § 542.14(b). *Id.*

16   <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1219-20 (9th Cir. 2010).

17          *<u>Argument & Analysis</u>*

18          Plaintiff avers in the first amended complaint that he has exhausted all issues for

19   PLRA purposes raised under the Bureau of Prisons (BOP) administrative remedy procedure in

20   Appeal # 540693 from FCI-Safford (AZ) and in Appeal # 564241 from FCI-Victorville (CA).

21   FAC, p. 1. Defendants counter that he failed to exhaust his administrative remedies because he

22   did not complete his appeals to the Office of General Counsel (OGC) and that his *Bivens* claims

23   against the federal defendants must be dismissed. MTD, pp. 11, 13.

24          Although plaintiff has identified Appeal # 540693 as involving the FCI- Safford

25   defendants, defendants records' (uncontested on this point) indicate that plaintiff was housed at

26   Victorville from October 11, 2007, until December 9, 2008, and located at FCI-Safford from

1   December 17, 2008 to December 16, 2009.  MTD, Declaration of Sarah Schuh, ¶ 4 A & B, Ex.

2   B-1, B-2. [5]  Therefore, this appeal necessarily must encompass plaintiff's claims against

3   defendants at Victorville (Quinn, Sterling) and certain of his claims against defendants at

4   Safford (Garrett, Ferriol, Acosta).  More precisely, Appeal # 540693 encompasses plaintiff's

5   Eighth Amendment claims against Quinn, Sterling, Garrett, Ferriol, and Acosta regarding the

6   alleged inadequate medical care he received after the July 22, 2008 surgery, in the form of

7   denying him pain medication, a brace, corrective surgery, other medical care up to the time of

8   his second surgery on September 1, 2009.  The court will here chart the dates set forth by

9   defendants as to Appeal # 540693:

10              May 29, 2009- grievance regarding pain medication directed to
            the warden; MTD, p. 12, Declaration of Sarah Schuh, ¶ 6,
11          Exhibits C-2,[6] D-1.[7]

12              June 11, 2009- warden provided a response with an explanation;
            Id., Schuh Dec. ¶ 6 A, Exs. C-2, D-2.[8]

13

14   _____

15          [5] Sarah Schuh declares that she is a Federal Bureau of Prisons (BOP) employee whose
    duties include general case management and litigation preparation and assisting the United States
16   Attorney's Office and that she has access to the SENTRY database for the BOP, which can
    generate, inter alia, an inmate's history of both his admission and his designation [i.e., location]
17   and an administrative remedy report which is a synopsis of an inmate's administrative remedy
    requests.  See MTD Schuh Dec., docket # 31-2, ¶¶ 1, 3-5.

18          [6] Ex. C-2, docket # 31-3, is a computer print-out entitled "administrative remedy
    generalized retrieval full screen format," showing May 29, 2009, as the date when plaintiff's
19   administrative remedy request for pain medication was received.

20          [7] Ex. D-1 appears to be a copy of plaintiff's handwritten request, dated May 27, 2009,
    stating that this request "is a continuation of a B-8 filed 1-26-09," after which plaintiff filed "a B-
21   10."  Plaintiff states therein that he was notified on May 22, 2009, that both the BP-8 and BP-10
    were lost.  He avers that he is "still in debilitating pain" and seeks pain medication and states that
22   he is "still requesting correction of the decision made by medical."

23          [8] Ex. D-2 is a copy of a response to a request for administrative remedy dated June 11,
    2009 from the warden, indicating that it is a response to plaintiff's March 27, 2009 request for
24   pain medication.  Included in the response is a summary of the treatment plaintiff had received at
    FCI-Safford, identifying plaintiff as having had "a failed AC joint reconstruction" at Victorville
25   and indicates that "[t]he orthopedic surgeon recommended a revision AC joint reconstruction... ."
    The warden reviews the medication he has received for his pain and states that plaintiff "should
26   report to sick call to discuss" his "pain management."  Plaintiff is informed in the response that

1
2
3
4

July 2, 2009-regional director received appeal;
Id., Schuh Dec. ¶ 6B, Exs. C-3,[9] D-3.[10]

July 24, 2009-regional director responded with an explanation-
plaintiff informed he could appeal to OGC within 30 days;
Id., Ex. D-4.[11]

5   Defendants contend that thereafter, plaintiff never submitted, or re-submitted, his

6   appeal to the OGC level and at this point he is foreclosed from doing so.  MTD, p. 14.  Plaintiff

7   does not dispute this; rather, it is plaintiff's position that the BOP by attempting corrective

8   surgery on September 1, 2009, was responding to his appeal regarding inadequate pain

9   management, lack of physical therapy and for additional surgery.  Opposition (Opp.) (docket #

10  35), pp. 4-5.  Plaintiff does offer a somewhat differing chronology of his administrative remedy

11  requests regarding this appeal within his first amended complaint, stating that he filed a BP-8

12  (informal resolution) request which was denied by defendant Garrett but not signed by her.  He

13  thereafter alleges that his BP-9 grievance was filed with the warden in Feb., 2009, followed by

14  an appeal to the regional office (BP-10) in March 2009.  However, plaintiff states that on May

15  22, 2009, he was told that the BP-10 could not be located or did not exist, after which he filed

16  another BP-9 on May 27, 2009, and re-filed a BP-10 on June 28, 2009.  Plaintiff claims that

17  while waiting for a response to the BP-10 [regional director], the corrective surgery was

18  performed.  FAC, p. 6, ¶¶ 15-16.  Plaintiff contends the follow-up surgery, which he maintains

19

20  he may appeal to the regional office within 20 days.

21  [9] Ex. C-3 is a computer print-out in which it is recorded that the appeal was received on
July 2, 2009, requesting pain medication.

22

23  [10] Ex. D-3 is a copy of plaintiff's handwritten appeal to the regional office dated June 28,
2009, complaining that he is not receiving adequate pain medication for "extreme pain" he is
suffering as a result of the "failed surgery."

24

25  [11] Ex. D-4 is a copy of the July 24, 2009 response from the regional director plaintiff
received to the appeal of the warden's June 11, 2009 decision.  In this decision, a change in
plaintiff's medication as of June 18, 2009, is described.  Plaintiff is informed that he has 30 days

26  to appeal to the OGC if dissatisfied with the response.

showed that "extensive permanent damage" had been done by defendant Redix in the initial negligently performed procedure, should not absolve defendants of the prior negligence causing permanent disability to which he was subjected as well as the lack of proper after-care, which amounted to deliberate indifference to his pain and the suffering he endured in the interim period between the surgeries. Opp., at 5. Plaintiff therefore is maintaining that once he received the remedy of corrective surgery in response to his appeal there was no point in proceeding to the final level of appeal. In their reply, defendants note that plaintiff concedes not having proceeded to the OGC, that this admission warrants dismissal for failure to exhaust administrative remedies, and that at this point he can no longer proceed to the OGC. Reply (docket # 37), pp. 2-3, citing 28 C.F.R. §§ 542.15(a)[12] and 542.18.[13]

Defendants have submitted a copy of plaintiff's handwritten grievance, dated May 27, 2009, but they have failed to note the substance of the claims therein as well as the dates identified. MTD, Schuh Dec., Ex. D (docket # 31-3), p. 18. In that grievance plaintiff states the following (see also, footnote 7):

> This is a continuation of a B-8 filed 1-26-09. I then fil[]ed a B-10[:] the first part March, then on 5-22-09 was notified that both my B-8 and B-10 were lost. I am still in debilitating pain and am requesting pain medication to lessen my pain. The request in the attached B-8[.] I am still requesting correction of the decision

---

[12] This provision is adequately described by the Ninth Circuit, as noted previously, in Nunez v. Duncan, 591 F.3d at 1219-20.

[13] This provision provides the response times for requests or appeals. "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

1    *Id.*                  made by medical.

2          In the June 11, 2009, warden's response, the warden references plaintiff's

3    "Request for Administrative Remedy dated *March* 27, 2009 in which you are requesting pain

4    medication."[14]  *Id.*, at Ex. D, p. 19.  This date provided by the warden in his decision as to which

5    request he is responding lends credence to plaintiff's claim that he filed earlier grievances: a BP-

6    10 in March [of 2009] and later, on May 22, 2009, notwithstanding that he had evidently been

7    told his earlier BP-8 and BP-10[s] had been lost, and even though the form to be used to file a

8    request to the warden is a BP-9.  (Of course, as noted above, plaintiff alleged in his amended

9    complaint that he had filed a BP-9 to the warden in February, 2009).  This gap between March

10   27, 2009, identified by the warden, and May 27, 2009, is not explained by defendants, nor is

11   there adequate evidence produced to show that the date the warden cited for the grievance being

12   addressed was only inadvertently identified as March 27, 2009, when he actually meant May 27,

13   2009.  Under 28 C.F.R. § 542.18 (see footnote 13 above), the warden has 20 calendar days to

14   submit a response to a request or appeal that has been accepted with a possible additional 20

15   days as an extension.  A June 11, 2009, response to a March 17, 2009, request is a gap of 76

16   days, which obviously exceeds the regulatory provision governing the response time by the

17   warden.

18          In Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819 (2001), as noted, the Supreme

19   Court held that regardless of the form of relief sought, prisoners are required to exhaust

20   available administrative remedies.  In Booth, the Supreme Court also stated that there were no

21   exceptions to the statutory exhaustion requirement:

22        That Congress has mandated exhaustion in either case defeats the
           argument of Booth and supporting amici that this reading of §
23        1997e (1994 ed., Supp. V) is at odds with traditional doctrines of
           administrative exhaustion, under which a litigant need not apply
24        to an agency that has "no power to decree . . . relief," Reiter v.
           Cooper, 507 U.S. 258, 269, 113 S. Ct. 1213, 122 L.Ed.2d 604

25

26        [14] Emphasis added.

10

(1993), or need not exhaust where doing so would otherwise be futile.  See Brief for Petitioner 24-27; Brief for Brennan Center for Justice et al. as Amici Curiae.  Without getting into the force of this claim generally, we stress the point (which Booth acknowledges, see Reply Brief for Petitioner 4) that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.  See McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L.Ed.2d 291 (1992); cf. Weinberger v. Salfi, 422 U.S. 749, 766-767, 95 S. Ct. 2457, 45 L.Ed.2d 522 (1975).  Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies.

Booth, 532 U.S. at 741 n. 6, 121 S.Ct. at 1825 n. 6.

However, Booth does not refute the principle that a complaint should not be dismissed for failure to exhaust administrative remedies where prison officials do not respond to an appeal in the time allowed for responding under grievance procedures.  Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("[a] prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

Prison officials have apparently not followed their own regulations regarding the time for processing administrative appeals in this case.  Under these circumstances, the delay in the processing of plaintiff's appeal excuses further exhaustion.  See Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998), cert. denied, 526 U.S. 1133, 119 S. Ct. 1809 (1999) (a prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.)[15]  Powe and Underwood have often been followed in this Eastern District.  See e.g., Nible v. Knowles, 2010 WL 3245325 (E.D. Cal. 2010); Lomako v. CSP Corcoran, 2010 WL 2698743 (E.D. Cal. 2010); Habig v. McAllister, 2010 WL 2511290 (E. D. Cal. 2010).  Therefore, the court will find this grievance/administrative remedy was exhausted.

In addition, defendants maintain that plaintiff has cited no authority and that none

---

[15] Abrogation on another ground recognized in Carbe v. Lappin, 492 F.3d 325 (5th Cir. 2007).

exists for the proposition that when the BOP attempted corrective surgery on September 1, 2009, he was relieved of the obligation to pursue his administrative remedies to the final level. Reply, p. 3.   However, as the Ninth Circuit has stated "[a]ctions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991), and in § 1983 cases "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.' 42 U.S.C. § 1997e(a)." Sapp v. Kimbrell, 623 F. 3d 813, 822 (9th Cir. 2010).  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available'"; however, having received all "available" remedies at an intermediate level of review, a prisoner need not exhaust further levels of review once. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  As there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown, 422 F.3d at 936-37.  This court finds that for plaintiff, having received the response he sought in the form of his corrective surgery prior to having proceeded to the final level of review, no further relief was available, and that plaintiff had essentially exhausted his administrative remedies as to the claims arising resulting from the initial surgery.  Thus, as to the claims arising from this appeal, that is, from the initial surgery until the second surgery, the court finds the claims to have been administratively exhausted on this basis as well.  The motion for dismissal for failure to exhaust administrative remedies should be denied as to these claims.

Appeal # 564241 encompasses plaintiff's claims of deliberate indifference to a serious medical condition against defendants Acosta, Ferriol and Garrett, primarily an alleged denial of pain medication following the September 1, 2009, corrective second surgery.

As to Appeal # 564241, defendants contend the following:

November 10, 2009, plaintiff submits request regarding pain medication, a follow-up exam and physical therapy;  MTD, p. 12,

\\\\\

12

\\\\\

Shuh Dec., ¶ 7A, Exs. C-4,[16] E-1.[17]

December 2, 2009, request closed by warden with explanation; Id., Exs. C-4, E-2.[18]

December 10, 2009, appeal received by regional director; Id., at ¶ 7B, Exs. C-5,[19] E-3.[20]

January 15, 2010, appeal denied, with notice that plaintiff had 30 days to appeal to OGC.  Id., Exs. C-5, E-4.[21]

---

[16] This print-out shows the date the appeal was received as Nov. 10, 2009, and notes it was closed on Dec. 2, 2009.

[17] This exhibit is a copy of plaintiff's hand-written administrative remedy request dated Oct. 30, 2009, seeking pain medication, a follow-up post-operative examination "as ordered by surgeon 4 week post-op."  Plaintiff also sought physical therapy and any rehab which he states he was being refused.

[18] This exhibit is a copy of the warden's December 2009 response to plaintiff's Oct. 30, 2009 request, noting the "reconstructive surgery of the right acromioclavicular joint on September 1, 2009."  The warden also indicates that plaintiff had been seen on Oct. 9, 2009 by the clinical director who he states conducts post-surgical follow-up.  He records that the nursing staff has provided instructions for plaintiff's "self-conducted physical therapy exercises," and states that he was seen on Oct. 21, 2009 for the pain medication request but was not placed in the Chronic Care Clinic but rather instead was referred for "over-the-counter anti-inflammatory pain medication."  Plaintiff was informed that he had 20 days to appeal the response to the Western Regional Office.

[19] This exhibit is a print-out showing receipt of plaintiff's next level appeal, apparently to the regional director, on December 10, 2009, and a denial of the appeal on January 15, 2010.

[20] Ex. E-3 is a copy of plaintiff's hand-written request, dated December 6, 2009, stating that he had been told by his surgeon that the surgeon would see him four weeks post-op but that the surgeon was not sure where the exam would take place; that the exercises he had been given were not for building or strengthening "stabilizer muscles"; that the Oct. 9, '09 exam had been for a muscle spasm in his back and that no shoulder exam had been given then; that he needed "proper physical therapy to heal correctly"; that he was still in great pain and "still being refused any treatment."

[21] Ex. E-4 is a copy of the Jan. 15, 2010, response by the regional director referencing plaintiff's appeal of the warden's Dec. 9, 2009 response (this date is in conflict with the date plaintiff shows for his appeal to the regional director, Dec. 6, 2009, which would mean that plaintiff filed his appeal before the response came).  In the denial, the regional director states that the hospital had recommended plaintiff's arm be kept in a sling for six weeks, with only limited exercises and that plaintiff was not to do strengthening exercises for three months post-op.  Plaintiff is told that his prescription of Acetaminophen and Ibuprofen for pain is temporary and plaintiff must purchase future pain meds when his supply is gone.  Plaintiff is told that the

1    June 15, 2010, instant action filed.[22]

2    July 19, 2010, OGC received plaintiff's appeal, five months late.
     Id., at ¶ 7C, Ex. C-7.[23]

3

4    August 6, 2010, OGC rejected appeal for multiple filing errors,
     including untimeliness.  OGC in the notice informed plaintiff he
     must provide staff verification on BOP letterhead documenting

5    that the untimeliness of his appeal was not his fault and could
     resubmit his appeal in correct form within 15 days.  Id., at ¶ 7 C 1-

6    4, Ex. C-7.

7    March 1, 2011, OGC received resubmitted appeal seven months
     later. Id. at ¶ 7 D, Ex. C-7.

8

9    March 9, 2011, OGC rejected appeal as untimely again explaining
     he must provide staff documentation showing the untimeliness
     was not his fault.  Id., at ¶ 7 E.

10

11          Defendants maintain that plaintiff did not ever re-submit the appeal to the OGC

12   with the requested documentation and thus failed to exhaust his administrative remedies.  MTD,

13   p. 13.  In opposition, plaintiff correctly notes that there is no dispute as to his having properly

14   proceeded with his appeal through the level of his filing to the regional director (BP-10) with

15

16   clinical director did not recommend a physical therapist referral for him, but that the therapy
     instructions given were to be self-conducted and that the progression of his shoulder

17   rehabilitation would "continue to be monitored."

18          [22] Defendants identify the date of the filing of this action as June 21, 2010, which is the
     date file-stamped on the original complaint.  However, plaintiff dated the complaint as signed on

19   June 15, 2010, and, although he did not include a certificate of service, the court will liberally
     apply the mailbox rule to identify June 15, 2012 as the filing date.  Pursuant to Houston v. Lack,

20   487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988) (pro se prisoner filing is dated from the date
     prisoner delivers it to prison authorities); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir.

21   2009), holding that "the Houston mailbox rule applies to § 1983 complaints filed by pro se
     prisoners").

22

23          [23] Ex. C-7 is a print-out from the administrative remedy generalized retrieval format
     which shows a receipt date for appeal # 564241-A1 of July 19, 2010, concerning "pain

24   medication/followup exam, physical therapy" and its rejection on August 6, 2010 for, inter alia,
     untimeliness, with a statement that plaintiff was to provide staff verification on BOP letterhead

25   showing that he was not at fault for the untimeliness.  There is also an entry for appeal # 564241-
     A1, with the same subject matter, dating receipt of that appeal as March 1, 2011, which, on

26   March 9, 2011,was also rejected as untimely and wherein plaintiff was again instructed to
     provide documentation that the lateness of the filing was not his fault.

1  respect to appeal # 564241.  Opp., p. 5.  However, he takes issue with the representation by

2  defendants that he received the denial by the regional director on January 15, 2010; instead, he

3  asserts, he received two separate notices from the Western Region extending the time for the

4  regional director's response.  Id., & Exs. A and B.  Ex. A contains a copy of a notice from the

5  "Administrative Remedy Coordinator Western Regional Office," dated Jan. 20, 2010, entitled

6  "extension of time for response - administrative remedy" which states:

7          Additional time is needed to respond to the regional appeal
           identified below.  We are extending the time for response as
8          provided for in the administrative remedy program statement.

9  Opp., Ex. A.

10  The appeal at issue is identified as # 564241-R1, and it is dated as having been received on Dec.

11  10, 2009.  Id.  The notice states that a response is due by February 8, 2010.  Id.  Ex. B is a

12  notice which appears to be identical to the first notice in every respect, including the Feb. 8,

13  2010 extended deadline, with the exception that the notice this time is dated April 15, 2010,

14  where the original was dated Jan. 20, 2010.  Plaintiff maintains that thereafter, on or about July

15  1, 2010, he finally received the denial which he avers was backdated to Jan. 15, 2010.  Opp., p.

16  6.  He also contends that when he received the response, he was not provided with the required

17  copies of the original BP-10 filed which must be filed, in a continuing appeal with the BOP.  Id.

18  Plaintiff states that, notwithstanding the alleged inaccuracy of the date of the response and the

19  missing copies, he nevertheless made a good faith effort to proceed with the administrative

20  remedy procedure by submitting a timely appeal within the BOP time limits even though time

21  limits had not been adhered to by the BOP in the regional director's response.  Id.  Plaintiff

22  thereafter references the rejections which defendants have noted, maintaining that the rejections

23  were predicated on an inaccurate date for the response from which he was appealing.  Id., at 6-7.

24  Plaintiff also claims that the response was not sent to the correct location.  Id., at 7.

25          In reply, defendants are adamant that no backdating of the BP-10 appeal response

26  from the regional director could have occurred.  Reply, pp. 2-6.  Defendants note the Jan. 15,

1   2010 signature on the regional director's response and the entry in the SENTRY form noting

2   that date for the response (docket # 31-3, pp. 14, 26—Exs.C-5 & E-4 to Schuh Dec. ).  Id., at 3.

3   Defendants attach the declaration of Cecilia Burks, administrative remedy clerk for the BOP

4   Western Regional Office to their reply.  Ms. Burks includes a copy of an administrative remedy

5   update form dated January 19, 2010 as Ex. A, stating that she cannot manipulate the date and

6   time generated by SENTRY.  Reply, Burks Dec. ¶ 6.   Ex. A shows an entry indicating that Jan.

7   15, 2010 was the date of the regional director's denial.  The same form indicates that the

8   response was due on Feb. 8, 2010.  Ms. Burks believes she mailed the response to plaintiff at

9   FCI-Herlong on or before Jan. 19, 2010.  Reply, Burks Dec. ¶ 7.  She avers that she has never

10  received a signed backdated response from a regional director, and that she did indeed receive

11  the signed response to administrative remedy # 564241-R1 on Jan. 15, 2010.  Id.  She notes that

12  plaintiff was housed at FCI-Herlong on Jan. 19, 2010.  Id., at ¶ 5 F.  Ms. Burks, having reviewed

13  the packet for this appeal maintained in her office, states that the update form referenced above

14  shows, inter alia, that she extended the 30-day response deadline by 30 days to Feb. 8, 2010, an

15  extension which can only occur once.   Burks Dec., ¶¶ 5D & 8A.  Ms. Burks does not provide

16  extension notices to an inmate but the BOP prison staff where an inmate is located is required to

17  provide the notice.  Id., at ¶ 8A, B, C.  Ms. Burks states that the unit team at the institution

18  where an inmate is located prints and delivers a copy of the extension notice to the inmate and

19  has the capability to print the notice on the date it is generated and to reprint the notice at a later

20  date; she declares that she reviewed the notices provided by plaintiff and that they are both

21  print-outs regarding the same 30-day extension and were printed on Jan. 20, 2010 and April 15,

22  2010, respectively.  Id., at ¶ 8C & 9.

23          "In deciding a motion to dismiss for failure to exhaust, a court may 'look beyond

24  the pleadings and decide disputed issues of fact.'"  Sapp v. Kimbrell, 623 F. 3d at 821, quoting

25  Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir.2003).  While defendants' showing does not

26  definitively demonstrate that plaintiff received the response before July 1, 2010, it does raise

questions that plaintiff fails to adequately address.  Even assuming that plaintiff had received a duplicate notice on April 15, 2010, regarding the extension time for a response until Feb. 8, 2010, a date which had already passed, and yet had not received the response itself, plaintiff had some responsibility to follow up and he makes no showing whatever that he did that.  That is, knowing that the February 8th date had long since passed, plaintiff never asked for a copy of the decision or for confirmation that a decision had not been made.  Nor does he satisfactorily explain why he was unable to provide the requisite documentation to show that the late filing of his appeal to the OGC was not his fault and why he waited seven months after the initial appeal was rejected as, inter alia, untimely and then did not provide the documentation to show a late appeal was not his fault.  The Ninth Circuit has determined that where administrative appeals are "screened for proper reasons" administrative remedies remained "'available'" and plaintiff "was required to exhaust them." Sapp, at 826.

> The Supreme Court has held that this exhaustion requirement demands "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). To "proper[ly]" exhaust, a prisoner must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91, 126 S.Ct. 2378.

Sapp, at 821.

> To come within an exception to the exhaustion requirement for improper screening by a prison official:

> > a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

Sapp, at 823-824.

> If plaintiff did not receive the response until July 1, 2010, overlooking that he

1  had actual notice that it was due by Feb. 8, 2010 and evidently raised no alarm or sought no

2  explanation when it was not forthcoming at that time, it is unclear why he could not have not

3  included documentation such as a copy of a log entry of incoming mail dated on or around July

4  1, 2010, showing the date of the arrival of his appeal response.  In this instance, it does appear

5  that the second extension notice was simply the same notice reprinted on another date and that if

6  he did not make any effort to bring it to the attention of the regional director's office that he had

7  yet to receive an overdue appeal response, he cannot be wholly absolved of his responsibility to

8  track the response.  Moreover, plaintiff provides an inadequate explanation for failing to make a

9  showing with respect to why the appeal was untimely to the OGC, given at least two

10  opportunities.  Nor is there sufficient evidence to support plaintiff's contention that the appeal

11  response was backdated, particularly in light of the rebuttal evidence produced by the

12  defendants.  Also, it appears to the undersigned to be telling that, in recounting the chronology

13  of events in the first amended complaint, that while plaintiff takes issue with the Jan. 15, 2010

14  response from the regional director, it has nothing to do with the timing of the response or when

15  he received it, but rather concerns the substance, stating that the response contained false

16  information as to when and whether he was prescribed pain medication.  FAC, p. 7, ¶ 25.  In

17  other words, plaintiff makes no claim therein that he did not receive the appeal response (re:

18  Appeal # # 564241) on or around Jan. 15, 2010, even though he did make an issue as to the first

19  appeal (Appeal #  540693) not having been processed correctly in his first amended complaint;

20  instead, he simply proceeds next to February, 2010, in his chronology of the condition of his

21  shoulder.  Notwithstanding, the court does not find that plaintiff did, in fact, receive the January

22  15, 2010, response on or around that date, but does find that he was remiss in not having

23  sufficiently followed up when he did not, as he claims, receive the response shortly after Feb. 8,

24  2010, or certainly after April, 2010, when the notice was apparently re-printed, rather than

25  waiting until July 1, 2010, when he contends he finally received it.  Opp., p. 6.  Thus, the court

26  finds that plaintiff failed to exhaust his administrative remedies with regard to his claims

1   following the second or corrective surgery encompassed within Appeal # 564241.  Therefore,

2   plaintiff's claims against defendants arising from his second appeal must be dismissed as

3   unexhausted administratively.  This includes plaintiff's claims of having been denied pain

4   medication following the second surgery in September, 2009, by defendants Acosta, Ferriol and

5   Garrett, and any claims regarding a denial of physical therapy or post-op care against any

6   defendant.  However, as noted above, plaintiff's claims of inadequate medical care against these

7   defendants preceding the second surgery and encompassed within Appeal # 540693 have been

8   deemed exhausted administratively.

9   *Legal Standard for Fed. R, Civ. 12(b)(6) Motion*

10         In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

11   a complaint must contain more than a "formulaic recitation of the elements of a cause of

12   action;" it must contain factual allegations sufficient to "raise a right to relief above the

13   speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).

14    "The pleading must contain something more...than...a statement of facts that merely creates a

15   suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller,

16   Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain

17   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

18   Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at

19   570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content

20   that allows the court to draw the reasonable inference that the defendant is liable for the

21   misconduct alleged."  Id.

22         In considering a motion to dismiss, the court must accept as true the allegations

23   of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740,

24   96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party

25   opposing the motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395

26   U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court

will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), <u>quoting</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, <u>Mullis v. United States Bankruptcy Ct.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual allegations." <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. <u>See</u> <u>Noll v. Carlson</u>, 809 F. 2d 1446, 1448 (9th Cir. 1987).

<u>Official Capacity Claims</u>

Defendants contend that plaintiff's claims against defendant Acosta should be dismissed with prejudice because plaintiff specifically alleges this defendant was acting in his official capacity when he denied plaintiff pain medication.  MTD, p. 13, citing FAC, p. 4. Defendants also contend that as to the other federal defendants, that plaintiff neither alleges that they were acting outside of their official capacities or that they are sued in their individual capacities.  MTD, p. 13.  Plaintiff does seek injunctive relief (in addition to money damages), as noted by defendants, which does imply a suit against the defendants in their official capacities. <u>Id</u>.  Moreover, his claims for injunctive relief would have to be in an official capacity because no defendant could be enjoined in an individual capacity to provide relief since plaintiff, now housed at FCC-Lompoc according to court records, no longer resides at either prison where

1  defendants are employed.  Plaintiff in opposition argues that to dismiss any defendant in any

2  capacity is premature at this stage.  Opp., pp. 9.  He also argues that he has named the

3  defendants in their individual capacity as well "as employees of the Federal Bureau of Prisons."

4  Opp., pp. 9-10.

5          In plaintiff's amended complaint, plaintiff, emphasizing his status as a pro se

6  litigant, asks for the court's liberal consideration of his claims.  FAC, p. 8.  Pro se pleadings are

7  held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

8  520, 92 S. Ct. 594, 596 (1972).  "We have a 'duty ... to construe pro se pleadings liberally,'

9  especially when filed by prisoners. Hamilton v. United States, 67 F.3d 761, 764 (9th Cir.1995)

10  (citing Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980))."  Shakur v.

11  Schriro, 514 F.3d 878, 892 (9th Cir. 2008).

12          Defendant Acosta is correct that he may not be sued in a Bivens action in his

13  official capacity.  MTD, p. 13, citing, inter alia, Daly-Murphy v. Winston, 837 F.2d 348, 356

14  (9th Cir. 1987) (Bivens action may proceed against a defendant only in his or her individual

15  capacity not in an official capacity).  Indeed, in addition to plaintiff's being foreclosed from

16  proceeding against federal agents or employees in an official capacity in a Bivens action,

17  plaintiff may also not proceed under Bivens against the United States or its agencies.  See FDIC

18  v. Meyer, 510 U.S. 471, 486, 114 S. Ct. 994, 1005-06 (1994); Consejo de Desarrollo Economico

19  de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007)("Bivens created a

20  remedy for violations of constitutional rights committed by federal officials acting in their

21  individual capacities"); Balser v. Dept. of Justice, Office of U.S. Trustee, 327 F.3d 903, 909

22  (9th Cir. 2003) (Bivens lawsuit is against a federal employee in his individual, not official,

23  capacity); Morgan v. United States, 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre,

24  81 F.3d 854, 857 (9th Cir. 1996); Nurse v. United States, 226 F.3d 996, 1004 (9th Cir. 2000)

25  ("[a]ppellant cannot state a claim against the federal officers in their official capacities unless

26  the United States waives its sovereign immunity"); Cato v. United States, 70 F.3d 1103, 1110

1   (9th Cir. 1995);  Daly-Murphy, 837 F.2d at 356 ("[a]n individual may not maintain a *Bivens*

2   action for monetary damages against the United States.").

3           Plaintiff might have been able to seek injunctive relief under the Administrative

4   Procedures Act (APA); however, this avenue is now blocked as well.  In order to proceed

5   plaintiff must have exhausted the appropriate administrative procedures under the

6   Administrative Procedures Act (APA) because he cannot sue the individual defendants under

7   Bivens in their official capacity and he would be required to seek to enjoin the United States for

8   injunctive relief.  However, as the sovereign United States is immune unless it has waived

9   immunity,  Dept of Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S.Ct. 687 (1999), plaintiff

10  must have exhausted the apposite administrative remedy.

11          As to plaintiff's claims for prospective injunctive relief (individual capacity) in

12  the form of corrective surgery from a physician of his choice and "job training to compensate for

13  loss of use of the damaged shoulder as the plaintiff was a carpenter/contractor relying on his

14  physical strengths" (FAC, p. 9), defendants accurately contend that any such relief could only be

15  forthcoming from the government and not the defendants sued in their individual capacities.

16  MTD, pp. 13-14, citing, inter alia,  Bivens, 403 U.S. at 394[-95], 91 S. Ct. (1999);  Hawaii v.

17  Gordon, 373 U.S. 57, 58, 83 S. Ct. 1052)(1963) ("[t]he general rule is that relief sought

18  nominally against an officer is in fact against the sovereign if the decree would operate against

19  the latter");  id., citing, e.g., Dugan v. Rank, 372 U.S. 609, 620, 83 S. Ct. 999(1963) ("[t]he

20  general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on

21  the public treasury or domain, or interfere with the public administration" [internal citation

22  omitted]); Western Center For Journalism v. Cederquist, 235 F.3d 1153 (9th Cir. 2000)("*Bivens*

23  provides that federal courts have the inherent authority to award damages against federal

24  officials to compensate plaintiffs for violations of their constitutional rights").  In addition, of

25  course, plaintiff's claims for injunctive relief as against the individual defendants have been

26  rendered moot as he is no longer housed at either facility where the defendants are employed.

1   A viable remedy is a prerequisite to jurisdictional standing for injunctive relief.  See Newman v.

2   apfel, 223 F.3d 937, 941 (9th Cir. 2000).

3        As leave to amend would be futile with regard to plaintiff's claims for injunctive

4   relief at this point, plaintiff's claims for injunctive relief must be dismissed with prejudice.

5                    Fourteenth Amendment

6        The court has construed plaintiff's claims as arising under the Eighth

7   Amendment, which as noted by defendants, plaintiff has captioned his claim as arising under in

8   the FAC.  MTD, p. 14; FAC, p. 8.  However, to the extent plaintiff references the Fourteenth

9   Amendment among his allegations, defendants are correct that any such claims must be

10  dismissed.  Id.  Defendants note that the Supreme Court has recognized a citizen's implied right

11  to bring a claim for damages against federal agents/officers for a violation of his rights under the

12  Fourth Amendment (Bivens, 403 U.S. at 397, 91 S. Ct. 1999), as well as the under the due

13  process clause of the Fifth Amendment (Davis v. Passman, 442 U.S. 228, 248-49, 99 S. Ct.

14  2264 (1979), and for cruel and unusual punishment in violation of the Eighth Amendment

15  (Carlson v. Green, 446 U.S. 14, [19]-[23], 100 S. Ct. 1468 (1980).  MTD, p. 14.  However, the

16  Supreme Court is chary of implied causes of action (which are "disfavored") and of extending

17  Bivens liability "to any new context or new category of defendants."  Ashcroft v. Iqbal, 129 S.

18  Ct. 1937 (2009) [citation omitted];  W. Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116,

19  1119 (9th Cir. 2009) (noting that Bivens liability for a Fourth Amendment violation has been

20  extended by the Supreme Court only twice – to Fifth (due process) and Eighth Amendment

21  claims (see above) and has since refused to extend such liability).

22        More importantly, the Supreme Court has emphasized that the general

23  proscription of the Fourteenth Amendment or Fifth Amendment do not apply when a specific

24  Amendment applies to the situation at hand.  See Stansbury v. U.S. Govt. , 2011 WL 2938229

25  (9th Cir. 20111) citing Graham v. Connor, 490 U.S.386, 395, 109 S.Ct. 1865 (1989).  Here, the

26  Eighth Amendment governs plaintiff's claims for deliberate indifference to a serious medical

1   need.

2           Thus, any claim arising under the Fourteenth Amendment must be dismissed.

3           Federal Tort Claims Act

4           *FTCA, 28 U.S.C. § 1346(b) &§§ 2671-2680*

5           "The United States is immune from suit unless it consents to be sued." Graham

6   v. United States, 96 F.3d 446, 448 (9th Cir. 1996), citing United States v. Mitchell, 445 U.S.

7   535, 538, 100 S.Ct. 1349, 1351-52 [] (1980).

8           The United States shall be liable, respecting the provisions of this
            title relating to tort claims, in the same manner and to the same
9           extent as a private individual under like circumstances, but shall
            not be liable for interest prior to judgment or for punitive
10          damages.

11   28 U.S.C. § 2674 (in part). "The FTCA is a limited waiver of sovereign immunity." Graham,

12   96 F.3d at 448, citing United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 356-57 []

13   (1979). Under 28 U.S.C. § 2679(b)(1), the FTCA provides the exclusive remedy against the

14   United States "for injury or loss of property, or personal injury or death arising or resulting from

15   the negligent or wrongful act or omission of any employee of the Government while acting

16   within the scope of his office or employment...." See Billings v. United States, 57 F.3d 797, 799

17   (9th Cir. 1995).

18           *Argument*

19           In addition to his Eighth Amendment claims of deliberate indifference to a

20   serious medical condition, plaintiff sets forth a medical malpractice claim that appears to be

21   directed specifically to defendant Redix for the "complete failure" of this defendant surgeon "to

22   correct an acromioclavicular joint separation," apparently by not having placed a surgical pin

23   properly which "began to protrude" through plaintiff's skin; plaintiff has suffered shoulder

24   dislocation which has "prevented physical rehabilitation." FAC, p. 9. Plaintiff alleges that he is

25   awaiting a third surgery to continue the repair of the damage inflicted by defendant Redix. Id.

26   In their motion, the federal defendants assume that plaintiff only sought to raise this claim

1    against defendant Redix.  MTD, p. 14.  This is a logical inference based on the way this claim

2    was framed, and, as noted, this court has found defendant Redix to be in default.  However, in

3    his opposition, plaintiff appears to seek to sue all defendants under the FTCA, which the federal

4    defendants recognize in their reply.  Opp., pp. 10-11; Reply, p. 6.

5            Defendants move for dismissal of plaintiff's claim under the Federal Tort Claims

6    Act (FTCA), 28 U.S.C. § 1346(b) and §§ 2671-2680, for a lack of subject matter jurisdiction

7    and for failure to state a claim.  MTD, p. 14.  Defendants first contend that "[t]he United States

8    is the only proper defendant in an FTCA action," quoting Lance v. United States, 70 F.3d 1093,

9    1095 (9th Cir. 1995), and that plaintiff failed to name the United States as a defendant.  MTD, p.

10   15.  Second, defendants argue that to the extent the medical malpractice claim is construed as

11   coming under the FTCA, this court lacks subject matter jurisdiction because plaintiff failed to

12   exhaust his FTCA administrative remedies before filing this action.  Id.  This action was filed on

13   June 15, 2010, but, according to defendants, plaintiff's FTCA claim was not received by the

14   BOP until June 22, 2010.  MTD, Schuh Dec., ¶ 8A&B, Ex. F, (copy of plaintiff's "claim for

15   damage, injury or death" on "Standard Form 95" sent to the BOP for $6,000,000.00 for personal

16   injury, identifying the date of the "accident" as July 22, 2008, and stamped as received on June

17   22, 2010); Ex. G (copy of October 28, 2010, BOP denial of administrative claim).  The final

18   basis for dismissal of FTCA claims, according to defendants, is that "[u]nder the independent

19   contractor exception, the United States expressly has not waived sovereign immunity for

20   negligent acts by contractors."  MTD, p. 17, citing 28 U.S.C. § 2671 and citing Carrillo v.

21   United States, 5 F.3d 1302, 1304-05 (9th Cir. 1993) (civilian physician, employed by a private

22   entity provider contracted to army medical center, was an independent contractor not a federal

23   employee under the FTCA).

24           In opposition, plaintiff relies on Carlson v. Green, 446 U.S. 14, 23, 100 S.Ct.

25   1468 (1980), authorizing a Bivens remedy to compensate for constitutional injury

26   notwithstanding that the FTCA authorized award of damages caused by same conduct.  Opp.,

1   pp. 10-11. However, this argument is inapposite to the issue presented.  Plaintiff also asserts that

2   the United States is at least impliedly named as a defendant in this action and his action should

3   be liberally construed in that regard and that, if the court deems it necessary, he should be

4   permitted to amend the case caption to add the United States as a defendant.  Id., at 8-9.

5   Plaintiff, however, does not address the exhaustion and timeliness questions raised by

6   defendants.  He does not, for example, dispute the dates ascribed to the filing of his injury claim

7   to BOP and its denial.

8          *Analysis*

9          Under 28 U.S.C. § 2875(a), before proceeding on a court action, a claimant must

10  first have presented his claim "to the appropriate Federal agency and his claim shall have been

11  finally denied by the agency in writing and sent by certified or registered mail."  See Alvarado v.

12  Table Mountain Rancheria, 509 F.3d 1008, 1019 (9th Cir. 2007) ("[a]ppellants cannot establish

13  subject matter jurisdiction through the FTCA because they have not administratively exhausted

14  their claims"); id., citing Jerves v. United States, 966 F.2d 517, 519 (9th Cir. 1992); Vacek v.

15  United States Postal Service, 447 F.3d 1248, 1250 (9th Cir. 2006) ("[w]e have repeatedly held

16  that the exhaustion requirement [of the FTCA] is jurisdictional in nature and must be interpreted

17  strictly..."; Burns v. United States, 764 F.2d 722, 724 (9th Cir. 1985) (claim exhaustion

18  requirement of § 2675 "is jurisdictional in nature and may not be waived.").

19 
20 
21 
22 

         A tort claim against the United States shall be forever barred
         unless it is presented in writing to the appropriate Federal agency
         within two years after such claim accrues or unless action is begun
         within six months after the date of mailing, by certified or
         registered mail, of notice of final denial of the claim by the agency
         to which it was presented.

23  28 U.S.C. § 2401(b).

24         While by filing his administrative claim on June 22, 2010 to the BOP for an

25  injury dated on or from July 22, 2008, plaintiff was within the two-year statute of limitations

26  under 28 U.S.C. § 2401(b), for filing such a claim, his claim is nevertheless barred because, as

1    defendants aver, plaintiff failed to exhaust his administrative remedies before filing suit.  MTD,

2    p. 16.  Plaintiff filed the instant action (whether the date is ascribed to be June 15, 2010 or June

3    21, 2010) prior to even having commenced exhaustion of his FTCA claim on June 22, 2010.

4                        As defendants point out, plaintiff was foreclosed from bringing his FTCA claim

5    when he did, and this court lacks subject matter jurisdiction as to the claim because he failed to

6    exhaust his remedies administrative remedy first.  MTD, p. 16, citing 28 U.S.C. § 2675(a)[24];

7    McNeil v. United States, 508 U.S. 106, 112[,113], 113 S. Ct. 1980, 1984 (1993) ("[t]he FTCA

8    bars claimants from bringing suit in federal court until they have exhausted their administrative

9    remedies.").  Further amending the amended complaint would not cure the defect "[b]ecause §

10   2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint

11   is filed...."  MTD, p. 16, quoting Sparrow v. United States Postal Service, 825 F.Supp. 252, 255

12   (E.D.Cal. 1993).  Plaintiff's FTCA claim in this action was, therefore, brought prematurely and

13   must be dismissed.  Jerves v. United States, 966 F.2d 517 (requiring strict adherence to §

14   2675(a) and dismissing case where plaintiff had filed in district court after the FTCA claim had

15   been submitted to federal agency but before final denial of her claim was received and before

16   six-month period had elapsed).  Thus, plaintiff could theoretically only proceed on the FTCA

17   claim in a new lawsuit.  Sparrow, 825 F.Supp. at 255.  However, defendants are correct that the

18   dismissal of the FTCA claim must be with prejudice because it is now too late to allege this

19   claim in a new lawsuit because plaintiff had six months from the denial of his administative tort

20   claim, that is, from October 28, 2010, to file a new lawsuit and that six-month deadline (§

21

22          [24] "An action shall not be instituted upon a claim against the United States for money
     damages for injury or loss of property or personal injury or death caused by the negligent or
23   wrongful act or omission of any employee of the Government while acting within the scope of
     his office or employment, unless the claimant shall have first presented the claim to the
24   appropriate Federal agency and his claim shall have been finally denied by the agency in writing
     and sent by certified or registered mail. The failure of an agency to make final disposition of a
25   claim within six months after it is filed shall, at the option of the claimant any time thereafter, be
     deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a), in relevant
26   part.

1   2401(b)) expired on April 28, 2010.  See MTD, p. 17.  As plaintiff's claims for medical

2   malpractice against all federal defendants under the FTCA must be dismissed with prejudice

3   because the court lacks subject matter jurisdiction to proceed on any claim brought under the

4   FTCA, the court need not address any other basis for dismissal raised by defendants.

5           Venue

6           Defendants, at this point, only individual defendants in a Bivens action, also

7   move for dismissal for improper venue under Fed. R. Civ. P. 12(b)(3).  The federal venue statute

8   requires that a civil action, other than one based on diversity jurisdiction, be brought only in:

9           1) a judicial district in which any defendant resides, if all
            defendants are residents of the State in which the district is
10          located;
            (2) a judicial district in which a substantial part of the events or
11          omissions giving rise to the claim occurred, or a substantial part of
            property that is the subject of the action is situated; or
12          (3) if there is no district in which an action may otherwise be
            brought as provided in this section, any judicial district in which
13          any defendant is subject to the court's personal jurisdiction with
            respect to such action.

14

15  28 U.S.C. § 1391(b).

16          Under 28 U.S.C. § 1406(a):

17          The district court of a district in which is filed a case laying venue
            in the wrong division or district shall dismiss, or if it be in the
18          interest of justice, transfer such case to any district or division in
            which it could have been brought.

19

20          As defendants note (MTD, p. 18), plaintiff's allegations indicate that a

21  substantial part of the events occurred at FCI Victorville (from the date of the first surgery on

22  July 22, 2008, until December 9, 2008), and following his December 17, 2008 transfer to FCI

23  Safford, plaintiff's claims arise against the defendants there continue through October 2009

24  (although this court has herein found plaintiff's claims following the September 1, 2009 second

25  surgery to be unexhausted).  FAC, pp. 4-7.  Further, although plaintiff recounts some events

26  occurring from February 2010 through May 2010, while at FCI-Herlong within this

28

1   district (the Eastern District of California), plaintiff has named no defendants located at

2   Herlong.  MTD, p. 18; FAC, p. 7.  Defendants point out that all federal defendants reside

3   "presumably" in other districts: either the BOP facilities in Victorville, California, located in the

4   Central District of California or in Safford, Arizona, within the District of Arizona.  MTD, p.

5   18.

6            Defendants are correct that having challenged the propriety of venue in this court,

7   it is plaintiff's burden to show venue in this court is proper.  MTD, p. 17, citing Piedmont Label

8   Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).  In opposition, plaintiff,

9   who, as previously noted, is currently housed at FCC-Lompoc, simply states that since his

10  location or re-location is subject to the "whims" of U.S. Attorney General and he found himself

11  located in the Eastern District of California and because his claims included that he is

12  substantially disabled and subject to ongoing constant pain due to the injury caused him by

13  defendants, that he believes venue was appropriate in this court.  Opp., p. 11.  He also believed

14  that this court's acceptance of the filing meant the venue was proper.  Id.  Plaintiff asks that if

15  the court now finds venue to be improper that the case be transferred rather than dismissed.  Id.

16           Dismissal or transfer for improper venue is, indeed, within the sound discretion

17  of this court.  King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992), citing 28 U.S.C. § 1406(a)

18  (see above).  The court finds, in this instance, that this case should be transferred to the Central

19  District of California for further adjudication with respect to the defendants remaining in this

20  lawsuit.

21           Accordingly, IT IS ORDERED that the Clerk of the Court make a district judge

22  assignment to this case.

23           IT IS HEREBY RECOMMENDED that:

24           1.  The federal defendants' motion to dismiss, filed on June 17, 2011 (docket #

25  31), be granted in part and denied in part, as follows:

26                a) DENIED as to plaintiff's Bivens claims against defendants Quinn and

Sterling at FCI-Victorville; and denied as to defendants Garrett, Ferriol and Acosta at FCI-Safford; however, as to Garrett, Ferriol and Acosta, DENIED only as to those claims for an Eighth Amendment violation up to the date of plaintiff's second surgery on September 1, 2009;

b) GRANTED as to plaintiff's Eighth Amendment claims against defendants Garrett, Ferriol and Acosta for plaintiff's failure to exhaust his adminstrative remedies as to his claims arising after the September 2009 second surgery and these claims be dismissed;

c) GRANTED as to plaintiff's <u>Bivens</u> claims against individual defendants in their official capacity and GRANTED as to plaintiff's claims for prospective injunctive relief and these claims be dismissed;

d) GRANTED as to plaintiff's Fourteenth Amendment claims and these claims be dismissed;

e) GRANTED as to plaintiff's medical malpractice claims brought under the FTCA for lack of subject matter jurisdiction and these claims be dismissed;

f) DENIED to the extent defendants seek dismissal for improper venue, but GRANTED to the extent that this case the remaining individual defendants seek transfer of this case and this case be transferred to the Central District of California.

2. Defendant Redix be found to be in default and the Clerk be directed to file these findings and recommendations upon him at the address for him provided at docket # 25 and #26.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: February 1, 2012

4                                                    /s/ Gregory G. Hollows
                                        UNITED STATES MAGISTRATE JUDGE

5   GGH:009
    maye1552.mtd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

31